# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF PUERTO RICO

UNITED STATES OF AMERICA,

Plaintiff,

v.

GAVINO RIVERA-HERRERA (1),

LUCIANO VEGA-MARTINEZ (2),

ALFONSO GONZALEZ-NEVAREZ (3),

RENE GARAY-RODRIGUEZ (5),

Defendants.

CASE NO. 15-361 (GAG)

## OPINION AND ORDER

Defendants Gavino Rivera-Herrera (1), Luciano Vega-Martinez (2), Alfonso Gonzalez-Nevarez (3), and Rene Garay-Rodriguez (5) were convicted by a jury for "conspiring to restrain trade" by rigging bids and allocating the market for public school bus transportation contracts in the Municipality of Caguas, in violation of 15 U.S.C. § 1; "conspiring to commit mail fraud" in connection with the auction for those contracts, in violation of 18 U.S.C. § 1349; and four counts of mail fraud, in violation of 18 U.S.C. § 1343. (Docket Nos. 225, 228-29, 231-32). At sentencing, the Court ordered the Government to file memoranda regarding restitution. (Docket No. 292). The Government briefed the Court and Defendants responded. (Docket Nos. 314-317; 325; 335-36; 338). For the reasons discussed below, Defendants Rivera-Herrera (1), Vega-Martinez (2), Gonzalez-Nevarez (3), and Garay-Rodriguez (5) are ordered to pay $342,094 in restitution.

Case No. 15-361 (GAG)

I. **Relevant Factual Background**

The following facts were taken from the Government's submission and are not questioned by Defendants:

In 2013, Defendants conspired "to rig their bids, allocate contracts, and submit fraudulent bids" for school bus services in Caguas. (Docket No. 314 at 2). After this collusion, in 2014, the Municipality of Caguas awarded Defendants the contracts they sought for school bus services. Id. Under these contracts, Caguas paid Defendants from February 2014 until December 2016. Id. at 3. In October 2016, Caguas hosted a new auction for bus transportation services and awarded the pertinent contracts in 2017, at prices below those awarded pursuant to the auction held in 2013. Id. at 4.

Defendants were indicted in 2015; the jury returned guilty verdicts in 2017; and the Court sentenced Defendants on February 6, 2018. (Docket Nos. 2; 229-32; 308). The Government now moves to impose restitution and proposes two methods based on the difference between the rigged contracts from 2014 and the contracts auctioned in 2017. (Docket Nos. 314-317).

II. **Discussion**

Defendants must pay restitution under the Mandatory Victims Restitution Act (MVRA). 18 U.S.C. § 3663A. When sentencing a defendant convicted for "an offense against property under this title . . . including any offense committed by fraud or deceit," the Court "shall order . . . that the defendant make restitution to the victim of the offense." Id. § 3663A(a)(1), (c)(1)(A)&(B). A "victim" is "a person directly and proximately harmed as a result of the commission of an offense for which restitution may be ordered." Id. § 3663A(a)(2). The purpose of restitution is "to make the victim whole again by restoring to it the value of losses it suffered as a result of the defendant's crime." United States v. Innarelli, 254 F. 3d 286, 293 (1st Cir. 2008). Restitution should be ordered

in the full amount of losses without considering the defendants' economic circumstances. 18 U.S.C. § 3664(f)(1)(A).

Defendants were convicted for offenses that include Title 18 offenses against property and involve pecuniary loss. The victim for purposes of the MVRA is Caguas because it was "directly and proximately harmed" as a result of Defendants' fraudulent scheme. 18 U.S.C. § 3663A(a)(2). As the Government posits, Caguas "ran the auction, awarded the contracts, and wrote checks to the defendants for work performed under those contracts." (Docket No. 317 at 5). Therefore, Defendants must make Caguas whole again by restituting the value of losses that they caused through their criminal activity.

Defendant Rivera-Herrera argues that the Court must consider Defendants' financial resources when assessing restitution. (Docket No. 338 at 5). But this must be considered when deciding "the manner in which, and the schedule according to which, the restitution is to be paid . . . ." 18 U.S.C.A. § 3664(f)(2). It is not considered when ordering restitution "in the full amount of each victim's losses as determined by the court . . . ." Id. (f)(1)(A). Therefore, the Court will not consider Defendants' economic circumstances.

A. Amount Calculation

The Government bears the burden of demonstrating the amount of restitution by a preponderance of the evidence. 18 U.S.C. § 3664(e). The "amount of restitution ordered must be based on actual loss, not intended or expected loss . . . ." Innarelli, 524 F.3d at 295. However, the Court's "calculation of restitution is not held to standards of scientific precision." United States v. Sanchez-Maldonado, 737 F.3d 826, 828 (1st Cir. 2013) (citing United States v. Salas-Fernandez, 620 F.3d 45, 48 (1st Cir. 2010)). The Court must respond "to some reliable evidence, [but] no more is exigible." Id. The standard for "some reliable evidence" is very low; a "'modicum of

reliable evidence' will suffice." Salas-Fernandez, 620 F.3d at 48 (citing United States v. Vaknin, 112 F.3d 579, 587 (1st Cir. 1997)). Essentially, "the restitutionary amount must have a rational basis in the record." Id.

The burden of determining the amount of restitution cannot outweigh the victim's interest in restitution. See 18 U.S.C.A. § 3663A(a)(3)(B); United States v. Gallant, 537 F.3d 1202, 1254 (10th Cir. 2008) ("Section 3663A(c)(3)(B) directs sentencing courts to weigh the victim's need for restitution against the burden on the sentencing process."). Although restitution is mandatory, the MVRA orders the Court to forego restitution when "determining complex issues of fact" as to the amount complicates sentencing "to a degree that the need to provide restitution to any victim is outweighed by the burden on the sentencing process." The First Circuit has never considered this section of the MVRA. However, based on an elementary reading of the statute, the Court adopts the Second Circuit's interpretation that this section "plainly does not require the district court to surrender whenever one or more complex issues of causation or loss calculation appear." United States v. Gushlak, 728 F.3d 184, 192 (2d Cir. 2013). Actually, this section "explicitly contemplates that the district court weigh against the burden of ordering restitution the victims' interests in receiving restitution." Id.

The Government proposes two methods to calculate the amount of restitution. The first method compares the amount paid under the rigged 2013-14 contracts with the lowest bid submitted in the 2017 auction for the same services. (Docket No. 314 at 7). This method imposes $667,000.27 in restitution. Id. at 10. The second method compares the 2013-14 amount with the final contract prices from the 2017 auction. Id. at 7. According to the Government, the difference between the lowest bid and the final price in 2017 exists because "[t]he final agreed upon price in some instances is higher than the lowest bid price because some bidders were disqualified for a

variety of reasons." Id. This method yields $342,094.00 in restitution. Id. at 10. After selecting a method, the Government proposes (1) establishing the number of days that each Defendant provided services for under the 2014 contract and (2) multiplying it by the daily price difference between the 2014 and 2017 amounts. Id. at 7-8. To aid the Court, the Government submitted the necessary information to calculate the restitution amount under these methods, including an affidavit by the Assistant Director of Purchase and Auction in Caguas attesting to the information's accuracy. See Docket No. 314.

Defendants object to these proposed methods and poke holes in the Government's reasoning. Defendants Gonzalez-Nevarez and Vega-Martínez state that there should be no restitution because they provided the contracted services, and therefore Caguas suffered no actual loss. (Docket Nos. 325 at 1; 335 at 2). Defendant Gonzalez-Nevarez also labels the Government's method as "unclear" and challenges the premise that "true competition existed" in 2017. Id. at 3-4. He protests that the proposed method lacks reference "to any market analysis, caselaw, or economic literature that could be interpreted to establish that this is the adequate form and manner that is used to calculate the fair market value of school transportation services." Id. at 5. Defendant Rivera-Herrera also challenges the Government's method because "the Government wants to compare Rivera-Herrera's routes with 2 buses with a company that has about 100 buses for those same routes." (Docket No. 338 at 4). He also argues that he was paid less than what he bid for. (Docket No. 338 at 3). Likewise, Defendant Garay-Rodriguez argues that Caguas's information is "factually inaccurate." (Docket No. 336 at 8).[1] He also attacks the Government's method

---

[1] Defendant Garay's exhibits and argumentation are very confusing. If Defendant Garay is arguing that the information provided under oath by the Government is inaccurate, he should specify how. For example, if the Government submitted that Garay was paid $240 for the Borinquen route and Garay claims he was actually paid $100, then he should submit proof to support his claim. On the other hand, if Garay is arguing that the proper comparison for restitution purposes is between the 2011 and 2014 contracts, rather than between the 2014 and 2017 contracts, the Court rejects his proposition. The Court has only been provided with data comparing

considering "changing market circumstances, closing of schools, [and] change in routes." Id. at 7. In sum, Defendant Garay-Rodriguez warns, awarding restitution entails "intricate issues of proof of complex factual issues related to the amount of the claimed losses." Id. at 8.

The Government's proposed method is not scientifically precise, but it is based on a modicum of reliable evidence. It is rational to determine Caguas's loss due to Defendants' fraud by comparing the contract amounts when fraud existed and when fraud did not exist—or at least, has not been alleged. Moreover, Caguas's interest in restitution outweighs the difficulty of awarding restitution in this case despite the factual complexities entailed by determining the precise amount owed. It is public knowledge that Puerto Rico faces an unprecedented fiscal and economic crisis. Every penny matters. And Caguas, like any public instrumentality, has an axiomatic interest in combating corruption.

While not punitive in nature, restitution fights corruption by incentivizing prosecution and deterring misconduct. When the cost of fighting corruption exceeds the savings, the incentives to prosecute diminish. Restitution ameliorates the fiscal blow of prosecuting corruption and provides an incentive to municipalities like Caguas to cooperate with the federal government in prosecuting these kinds of cases. As to deterrence, failure to impose restitution would send a terrible message to potential corrupt actors in Puerto Rico's other seventy-seven municipalities: conspire, unjustly enrich yourself, and if you get caught, spend a few months in jail but keep what you stole—in the worst case, spend it on attorneys' fees. The Court refuses to adopt a "forget it Jake, it's Chinatown" attitude towards corruption in Puerto Rico.

---

2014 and 2017 and sees no purpose in delaying determination of restitution further by ordering the Government to compare with 2011 rather than 2017.

Despite Defendants' contention, this formula considers the services rendered because it orders restitution based on the difference between contracts, not the full amount of the contracts. But not all of Defendants' arguments are equally flawed. It is true that conditions may have changed between 2014 and 2017, and that the Government's method is imperfect. But it has a rational basis, and refusing to order restitution based on the method's imprecision would impose a greater injustice on the people of Caguas, who deserve to recover what Defendants misappropriated under the guise of servicing schoolchildren. Nevertheless, out of an abundance of caution, the Court will impose the second method, which yields the lowest amount.

B. Apportionment

"Where multiple defendants contribute to the property damage, 'the court may make each defendant liable for payment of the full amount of restitution or may apportion liability among the defendants to reflect the level of contribution to the victim's loss and economic circumstances of each defendant.'" Sanchez-Maldonado, 737 F.3d at 828 (citing 18 U.S.C. § 3664(h)). Although the Government seeks to apportion restitution equally among Defendants, the Court will apportion liability based on each Defendants' contribution to Caguas's loss. They all stood to gain from the conspiracy, but not equally. Those who gained more should restitute more, and allocating equally would be unfair to Defendant Gonzalez because it would multiply his liability almost tenfold.

III. Conclusion

Pursuant to the difference between the final contract prices in 2017 and the amounts paid to Defendants in 2014, multiplying the daily difference by the amount of days that Defendants provided services under the 2014 contracts, the Court orders Defendants to restitute the following amounts:

**Gavino Rivera-Herrera (1)—$125,750.00**

Case No. 15-361 (GAG)

    **Luciano Vega-Martínez (2)—$93,055.00**

    **Alfonso Gonzalez-Nevarez (3)—$9,108.00**

    **René Garay-Rodriguez (5)—$114,181.00**

Judgment shall be amended accordingly upon receipt of translations pending per Docket No. 337.

**SO ORDERED.**

In San Juan, Puerto Rico this 12th day of April, 2018.

                                                *s/ Gustavo A. Gelpí*
                                                GUSTAVO A. GELPI
                                                United States District Judge